UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-14079-CR-MOORE/LYNCH

UNITED STATES OF AMERICA,

   Plaintiff,

v.

KELVIN IVAN DESANGLES,

   Defendant.

_____/



REPORT AND RECOMMENDATION ON PETITION
ALLEGING VIOLATIONS OF SUPERVISED RELEASE [D.E. 399]

   **THIS CAUSE** having come on to be heard upon the pending Petition Alleging

Violations of Supervised Release, and this Court having reviewed the Petition and having

conducted a final evidentiary hearing on June 29, 2016, at which time this Court received

evidence, testimony, and arguments of counsel, this Court recommends to the District

Court as follows:

   1.  The Defendant is charged in a Petition dated April 5, 2016 with alleged

violations of supervised release as follows:

| | |
|---|---|
| **Violation Number 1** | **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about 03/06/2016 in Orange County, Florida, the defendant committed the offense of Grand Theft Third Degree of a Motor Vehicle, contrary to Florida Statute 812.014(2)(c)(6). |
| **Violation Number 2** | **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about 03/06/2016 in Orange County, Florida, the defendant committed the offense of Conspiracy to Commit Grand Theft of a Motor Vehicle, contrary to Florida Statute 812.014(2)(c)(6)-5. |

**Violation Number 3**      **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about 03/06/2016 in Orange County, Florida, the defendant committed the offense of Possession of a Firearm in Commission of a Felony, contrary to Florida Statute 790.07(2).

**Violation Number 4**      **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about 03/06/2016 in Orange County, Florida, the defendant committed the offense of Possession of a Firearm/Ammunition by a Convicted Felon, contrary to Florida Statute 790.23-14.

**Violation Number 5**      **Violation of Standard Condition**, by failing to submit a truthful and complete written monthly report within the first five days of each month. The defendant has failed to submit a written monthly report for the months of December 2015, January 2016, and February 2016.

**Violation Number 6**      **Violation of Standard Condition**, by associating with a person engaged in criminal activity.  On or about 03/06/2016, the defendant was arrested with Kayla Michelle Rampersaud, W/F, 07/11/1988, by Orange County Sheriff's Office, for the offenses of Grand Theft Third Degree of a Motor Vehicle, Conspiracy to Commit Grand Theft of a Motor Vehicle and Possession of a Firearm in the Commission of a Felony.

**Violation Number 7**      **Violation of Mandatory Condition**, by failing to satisfy the Court Ordered restitution.   On 09/08/2011, restitution in the amount of $1,494,875.67 was ordered by the Court and the defendant has failed to satisfy this financial obligation as ordered.

2.      The government's first witness was Darlene Galloway of the United States Probation Office in the Middle District of Florida.  She has been supervising the Defendant for three years in the Orlando office.  He was required to file monthly reports, but failed to

2

timely do so for the months of December 2015, January 2016 and February 2016.  She testified that those reports were due on the 5th day of the following month.  She testified that the Defendant did bring in the delinquent reports in March of 2016, but gave no reason why they were late.  She recalls this to be after the Defendant's arrest on March 6, 2016 from which some of the remaining violations arise.

3.      In respect to restitution, the Defendant was required by the District Court to provide 10% of his monthly income as restitution.  The Defendant did not make restitution payments for October and November 2015.  Thereafter he did make payments in December 2015 through and including March 2016.  Government's Exhibit No. 1 admitted into evidence without objection is a printout of the Defendant's restitution payments.  His last restitution payment was March 18, 2016 as reflected on that exhibit.  The exhibit also reflects that the Defendant has not been compliant with making monthly restitution payments since his most recent release from prison.

4.      USPO Galloway identified the Defendant in open court as the person that she knows to be Kelvin Desangles whom she has been supervising.  She learned of his arrest on March 6, 2016 by way of a voice message left on her office phone by a deputy sheriff with the Orange County Sheriff's Office. The Defendant's conditions of supervised release did not permit him to possess or be around firearms nor to be associated with persons involved in any criminal conduct.

5.      USPO Galloway testified that immediately after being released from prison in October of 2015, the Defendant advised her that he went to work immediately at his mother's hair salon and had income of approximately $1,000 per month.  This began in October of 2015. Government's Exhibit No. 1 appears to reflect payments of $99.40 for

December 2015 and January, February and March of 2016.   Prior to that time the Defendant's supervised release had been revoked in June of 2015 as reflected in the Petition and he was committed to the custody of the Bureau of Prisons for a period of six months.  This is why he was to begin his restitution payments upon release from prison in October of 2015.  Government's Exhibit No. 1 reflects that he did not make restitution payments for October and November of 2015 when he was working for his mother, as he told USPO Galloway.

---

6.      The next witness called by the government was Deputy Sheriff Fort of the Orange County Sheriff's Office.  On March 6, 2016 he was on duty in Orange County in a marked unit conducting road patrol.  He saw a vehicle in a convenience store/gas station which matched the description of a vehicle reported as stolen from Hertz Rental Cars.  The vehicle was reported stolen on or about January 12, 2016.  He confirmed this via teletype. The description of the stolen vehicle was in both NCIC and FCIC computers.

7.      The vehicle, being a Jeep Cherokee, was at the gas pumps and two individuals were nearby.  One individual which Deputy Fort identified in open court, was the Defendant.  He was pumping gas into the vehicle.  There was a female who apparently was on the driver's side of the vehicle with the door open.  Deputy Fort requested backup units and then approached both individuals.  He had both the female and the Defendant sit on the ground.  He secured them with handcuffs after backup units arrived.

8.      Inside the car, in plain view from outside, were seen firearms.  The doors of the vehicle were open and Deputy Fort could see into the vehicle without moving any

4

obstructions.  Government's Exhibits Nos. 2 through 10 are photographs admitted into evidence without objection at this hearing.  Government's Exhibits Nos. 2 and 3 are of the vehicle in question.  Government's Exhibit No. 3 reflects that there is a Florida tag on the vehicle.  Government's Exhibit No. 4 is a handgun and magazine clips seized from the vehicle.  Government's Exhibit No. 5 is the hard case in which the gun was originally seen. Government's Exhibit No. 6 is the interior of the back seat of the vehicle where Deputy Fort testified he retrieved the rifle.  Government's Exhibit No. 7 is a photograph of the front of the vehicle.  Government's Exhibit No. 8 is a photograph of the rifle hard case leaning against the deputy's vehicle and the soft rifle case with the rifle on top sitting on top of the vehicle. Government's Exhibit No. 9 is the rifle testified to by Deputy Fort and it is depicted lying inside the soft case.  Government's Exhibit No. 10 is another photograph of the hard case open leaning against the patrol car.

9.     Deputy Fort saw the handgun and hard case on the floorboard of the passenger seat leaning up against the passenger's side of the center console area.  The gun case was "cracked open" and he could see the handgun within that case from outside the vehicle.  He testified that he never saw the female go into the passenger's side of the vehicle at any time.

10.     In the rear seat area of the vehicle, Deputy Fort saw a rifle inside the soft case depicted in the photographs admitted into evidence together with some clothing. There were loaded ammunition magazines in there as well.  The barrel of the rifle was protruding from the unzipped soft case. Deputy Fort testified that he could see the barrel of the rifle protruding from the soft case from where he was standing outside of the vehicle. This rifle, within the soft case, was in the back seat directly behind the front passenger's

seat.  The Defendant was standing right next to the passenger's side when Deputy Fort approached the vehicle.

11.     A rental receipt was found in the vehicle, but it did not list the Defendant nor the female as a permissible user or renter of the vehicle.  The female was identified by Deputy Fort as Kayla Michelle Rampersaud, a white female with date of birth of 7/11/1988.

12.     Deputy Fort explained to the Defendant and Ms. Rampersaud that the vehicle was listed as stolen.  The Defendant said that he borrowed the vehicle from a friend and that Ms. Rampersaud was driving it with the Defendant's permission.  The Defendant could not provide the name of his friend.  There were a lot of personal possessions and clothes in the vehicle.

13.     Deputy Fort arrested both the Defendant and the female for conspiracy to commit grand theft of a motor vehicle, grand theft of a motor vehicle, and possession of a firearm in the commission of a felony.  Additionally, the Defendant was arrested for possession of a firearm by a convicted felon.  Deputy Fort does not know what the State Attorney's Office in Orange County has done with these charges.  He could only testify as to the charges for which he arrested each of these individuals.

14.     Deputy Fort testified that he did not know how long overdue the vehicle was. It was simply listed as stolen in January of 2016.  He was not able to point to any specific evidence which would reflect that the Defendant and/or Kayla Michelle Rampersaud had knowledge that the vehicle was stolen.

_____

15.     The government then rested its case.

6

16.     The Defendant presented no witnesses or evidence at the hearing.

## ANALYSIS

17.     This Court has considered all of the evidence submitted as well as arguments of counsel made at the conclusion of the hearing. Counsel for the government argued that the evidence clearly established that the vehicle had been stolen for over two months. The Defendant could not say who had loaned it to him. There was nothing that the Defendant could present to show that he was in rightful possession of the vehicle.

18.     In respect to the monthly reports, they were not filed on time and restitution was not paid for the months of October and November of 2015.

19.     Counsel for the government argued that the Defendant was associating with Ms. Rampersaud who was in possession of a stolen vehicle. Also counsel argued that the guns seized were in plain view.

20.     Counsel for the Defendant argued that Ms. Rampersaud was the operator and driver of the vehicle. The Defendant had a suspended license and was the passenger in the vehicle. Counsel argued that there was no evidence submitted that either Ms. Rampersaud or the Defendant knew that the vehicle was stolen or overdue as a leased vehicle. Further, counsel argued that the Defendant was merely present in the vehicle where the firearms were found and that they could have in fact been possessed by Ms. Rampersaud and not the Defendant.

21.     Counsel for the Defendant did not have any significant arguments concerning the failure to file monthly reports on time or make the restitution payments each month as required by the Court's prior sentence.

22.     The court record reflected that the Defendant is a convicted felon.  He was convicted of conspiracy to commit mail fraud in September of 2011.  He was sentenced by Chief Judge Moore to 27 months in prison followed by a term of supervised release as reflected in the Petition.  His supervised release was revoked in June of 2015 as this Court referenced above.  He was sentenced to an additional 6 months in the custody of the United States Bureau of Prisons.  He has recently been released. There is no evidence that the Defendant's civil rights have been restored permitting him to be around and/or possess firearms.

23.     The standard of proof in violations of supervised release, such as this, is by a preponderance of the evidence standard and not by a beyond a reasonable doubt standard.  Revocation of supervised release is treated as part of the penalty for the initial offense involved.  The violative conduct need not be criminal and the defendant need only to be found by a judge under a preponderance of the evidence standard.  United States v. Cunningham, 607 F.3d 1264 (11th Cir. 2010).

24.     Violations Numbers 1 and 2 arise from the Defendant's arrest for grand theft in respect to the subject vehicle.  However, there is no evidence that the Defendant knew or should have known that the vehicle was stolen and/or was a rental vehicle not returned timely to Hertz. The vehicle had a Florida tag on it which was registered to this vehicle as testified to by Deputy Fort.  This is how he knew that the vehicle was in fact stolen. Therefore, no one had changed tags to try to hide the identity of the vehicle.  It was being operated openly. There was no evidence that the vehicle had been "hot-wired." This Court has to assume that if that had been the case, Deputy Fort would have so stated.  The vehicle was being fueled at a service station in the middle of the afternoon.  There is no

8

evidence that the Defendant or the female operator of the vehicle was attempting to conceal the identity of the vehicle in any fashion. There is no evidence of obliterated or altered VIN numbers, tag numbers, or appearance of the vehicle. The fact that the Defendant was a passenger in a vehicle stolen from a rental company is insufficient to support a finding that he in fact knew that vehicle was stolen. See Danek v. State, 429 So.2d 1369 (3rd DCA Fla. 1983). A passenger in a stolen vehicle can be as guilty of possession of a stolen motor vehicle as the driver where there is circumstantial evidence to show that a reasonable person would have believed that the vehicle was stolen. G.M. v. State, 172 So.3d 963 (4th DCA Fla. 2015). In this case, there is no circumstantial evidence presented to the Court which would infer that the Defendant and/or Kayla Michelle Rampersaud had any knowledge that the vehicle was stolen. While the rental agreement was in the name of a third party, the Defendant's explanation was that he had been loaned the vehicle from a friend. The fact that he could not provide the name of a friend is not an indication of guilt. He may have not wanted to involve somebody or identify somebody who had loaned him the vehicle once he was informed that the vehicle was stolen.

25.    Nevertheless, the Court, even under a preponderance of the evidence standard, must have all of the essential elements established for the particular crime charged in the violation. The crime in this case is grand theft of a motor vehicle under Florida law. Knowledge, as the case law indicates, is an essential element of such crime. The mere possession without any other direct or circumstantial evidence is insufficient to establish the Defendant's knowledge that the vehicle was stolen and/or a non-returned rental vehicle. As this Court referenced above, the proper tag was on the vehicle. There

9

were no changes or obliterations to the VIN number. The vehicle color was not changed. There is no evidence that the vehicle had been "hot-wired." The Court assumes that the keys to the vehicle were being used to operate the vehicle or Deputy Fort would have pointed out otherwise. The vehicle was being operated openly and was being fueled during the middle of the day at a gas station on a main highway in Orange County. All of those circumstances would point to a lack of knowledge that the vehicle was in fact stolen.

26.    Violation Number 3 alleges the Defendant was in possession of a firearm in the commission of a felony. Violation Number 4 alleges the Defendant committed the offense of possession of a firearm/ammunition by a convicted felon. In respect to Violation Number 3, an element of that would be that the firearm was possessed during the commission of a felony which this Court interprets to be the grand theft vehicle charges. Since this Court has made a finding that the government has not established sufficient knowledge that the Defendant knew or should have known that the vehicle was stolen, this Court finds that there was no felony committed in respect to the possession of the vehicle. Therefore, Violation Number 3 which alleges possession of the firearm during the commission of the grand theft, to wit a felony, has not been established.

27.    In respect to Violation Number 4, this Court finds that the government has established that the Defendant was a prior convicted felon by virtue of the court records. There is no evidence that his civil rights have been restored or that he had a legal right to possess any firearms. Further, as referenced by this Court's findings, the firearms were constructively possessed by the Defendant.

28.    Possession of a firearm may be either actual or constructive. Constructive possession of a firearm exists when a defendant does not have actual possession, but

10

instead knowingly has the power or right and intention to exercise dominion and control over the firearm.  Further, the firearm need not be on or near the defendant's person in order to amount to knowing possession. As long as the government proves, through either direct or circumstantial evidence, that the defendant (1) was aware or knew of the firearm's presence, and (2) had the ability and intent to later exercise dominion and control over that firearm, the defendant's constructive possession of that firearm is shown.  United States v. Perez, 661 F.3d 568 (11th Cir. 2011).  The government is not required to show that a firearm was operable to obtain a conviction for possession of a firearm by a convicted felon.

29.     The handgun within the hard case was on the floorboard of the passenger's side of the vehicle where the Defendant was traveling.  He has a suspended license and the evidence established that the female was actually the driver of the vehicle.  As Deputy Fort testified, the handgun case and handgun were on the passenger's side of the center console floorboard directly adjacent to where the Defendant was sitting.  The case was open and the firearm was clearly visible to anyone within the vehicle based upon Deputy Fort being able to see the firearm from outside the vehicle.

30.     The rifle in the back seat was directly behind the seat where the Defendant was riding.  The barrel of the rifle was visible from outside the vehicle.  Even though it was in a case, anyone in the vehicle or outside the vehicle could have easily seen that firearm was there.  It is not necessary that the Defendant had actual control of either firearm.  The fact remains that each firearm was certainly visible to both occupants of that vehicle.  The handgun itself was immediately adjacent to the leg area where the Defendant was sitting in the vehicle.  The rifle was available to him in the back seat immediately behind the front

11

passenger's seat.  Therefore, this Court finds that constructive possession of the firearms has been established by their obvious presence by being open in the vehicle to anyone riding therein and the Defendant had the ability and intent to exercise dominion and control over both firearms which were well within arms length of where he was sitting in the vehicle.  Intent is established by the proximity of the firearms to the Defendant and their being readily visible in open gun cases which would easily to be removed from the vehicle.

31.    In respect to Violation Number 5, the Defendant did not file his monthly reports in a timely fashion as required.  The testimony of USPO Galloway established that. Even though the reports were filed late, the Defendant did not provide any explanation as to why he did not timely file those.  Therefore, strictly speaking, he has violated his supervised release by not timely filing those reports when they were due.

32.    Likewise in respect to Violation Number 7, the Defendant did not make restitution as required by the Court's sentence.  The Defendant told USPO Galloway that immediately upon his release from prison in October of 2015 he went to work at his mother's salon.  He knew he was to provide 10% of his monthly income for restitution.  He did not do so for the months of October and November of 2015 as reflected by Government's Exhibit No. 1.

33.    In respect to Violation Number 6, this charges that the Defendant was arrested with Kayla Michelle Rampersaud for the offenses of grand theft, conspiracy to commit grand theft, and possession of a firearm in the commission of a felony.  As referenced by this Court above, there is no evidence direct or circumstantial that either Kayla Michelle Rampersaud or this Defendant had knowledge that the vehicle in question was in fact stolen.  Therefore, the fact that he was arrested with Kayla Michelle

12

Rampersaud does not establish that she was engaged in any criminal activity. Since this Court finds that there is insufficient evidence to establish the commission of a felony in respect to the grand theft motor vehicle charges, then possessing a firearm in furtherance of those two alleged grand theft crimes would not stand either. Therefore, this Court finds that there is insufficient evidence to establish that the Defendant associated with a person engaged in criminal activity since this Court has made a finding that the government has not established criminal activity in respect to the alleged stolen vehicle.

34.     In summary, this Court finds that the evidence has not established, even by a preponderance of the evidence standard, the crimes of grand theft in respect to Violations Numbers 1 and 2. This Court's findings explain that in detail. Since this Court finds that the grand theft charge could not be established, then possessing a firearm during the commission of the alleged grand theft cannot be established either. Therefore Violation Number 3 has not been established.

35.     This Court finds that Violations Numbers 4, 5 and 7 have been established by a preponderance of the evidence standard. This Court's specific findings herein give the underlying basis for those findings.

36.     In respect to Violation Number 6, since there is insufficient evidence to establish knowledge in respect to the grand theft motor vehicle charges, then the possession of a firearm during the commission of the alleged grand theft cannot stand. Therefore, Violation Number 6 which alleges that the Defendant associated with a person engaged in criminal activity has not been established.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant be found to have not violated his supervised release in respect to Violations

13

Numbers 1, 2, 3 and 6, and that the Defendant be found to have violated his supervised release in respect to Violations Numbers 4, 5 and 7.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, the United States District Judge assigned to this case.  Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this 30 day of June, 2016, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Carmen M. Lineberger
Gerard Williams, Esq.
U. S. Probation (USPO Galloway)